IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Universal North America Insurance Company,** | Civil Action No. 2:16-693-DCN-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **George Bower, Danielle T. Bower, Aimee Spencer, Sara Gibbons, and Lacey Gibbons, individually and as parent and guardian and legal representative of Logan Gibbons and Mikelyn Gibbons,** | |
| Defendant. | |

This action has been filed by the Plaintiff seeking a declaration from the Court regarding whether it has a duty to indemnify and/or a duty to defend Defendants Danielle T. Bower and George Bower (collectively "the Bowers"), who were the insureds under a homeowner's policy issued by the Plaintiff. The claims brought against the Bowers arise out of an accident involving a golf cart driven by Mrs. Bower on which Lacey Gibbons, Sarah Gibbons, Logan Gibbons, and Aimee Spencer were occupants. On August 16, 2016, Aimee Spencer was dismissed as a party Defendant, without prejudice, pursuant to a release filed by the Plaintiff. The clerk entered an entry of default as to both of the Bower Defendants on August 31, 2016.

The Plaintiff previously filed a motion for summary judgment in this case, which was denied by the Court on February 17, 2017. However, on June 30, 2017, the Plaintiff filed a second

1



motion for summary judgment. As one or more of the Defendants are proceeding pro se, a Roseboro order was entered by the Court on July 5, 2017, advising all of the Defendants of the importance of a motion for summary judgment and of the need for them to file an appropriate response. Defendants were specifically advised that if they failed to respond adequately to the Plaintiff's motion, the motion could be granted. Lacey Gibbons, individually and as parent and guardian and legal representative of Logan Gibbons and Mikelyn Gibbons (collectively, "Responding Defendants"), thereafter filed a memorandum in opposition to summary judgment on July 14, 2017, to which Plaintiff filed a reply memorandum on July 21, 2017.

Plaintiff's motion is now before the Court for disposition.[1]

## Background

On November 28, 2015, Danielle T. Bower was operating a golf cart at approximately 10 miles per hour on a public road in her neighborhood, Rivertowne Club. Defendants, except Mr. Bower, were passengers at the time of the accident. Automobile traffic backed up behind the golf cart. As testified to by Mrs. Bower at her deposition:

> There is a golf course in our neighborhood and there is sidewalks. So I pulled up on this little grass area, and then there is a sidewalk and then there is the golf course. So I pulled up on the grass area to stop and let all, probably like two or three cars behind me [. . . ] My intentions were to pull up there and stop and let them pass and then get back to the road and keep going [...] I got all the way onto the grass, and then [...] it felt wobbly. Because I think I just overcorrected a little bit and then it tipped over [resulting in injuries to occupants of the golf cart].

See Danielle Bower Examination, p. 21.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Plaintiff has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Mrs. Bower also testified that the golf cart just flipped once, going up and landing on the driver's side. See Bower Deposition, pp. 11-12. Although Ms. Bower testified that the golf cart was lifted off of her after the accident, she testified that she did not stand up at that time, and when shown a photograph (Exhibit 4 to her deposition), she testified that the area where she is sitting in the photograph is where the golf cart flipped. See Bower Deposition, pp. 13-14. Mrs. Bower testified that the general area where the golf cart would have landed and fallen is near where her leg or body is located in the photograph (Exhibit 4 to her deposition). See Bower Deposition, p. 33.

At the time of the accident, the Bowers were insured under a homeowner's policy issued by the Plaintiff. See Plaintiff's Exhibit A. This policy covered the period from January 12, 2015, through January 12, 2016, which includes the time of the accident, and the Defendants asserted a claim against the Plaintiff's policy. Plaintiff then initiated this action seeking a declaratory judgment that the Bowers are not entitled to a defense or coverage with respect to this claim, and now again seek summary judgment, submitting some additional evidence that was not considered by the Court in denying its initial summary judgment motion. The Responding Defendants oppose Plaintiff's second motion for summary judgment, arguing (as they did in response to Plaintiff's first motion) that they are entitled to coverage for their claims based upon the terms of the homeowner's policy.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party

3



must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

**Discussion**

Under South Carolina law, "the duty to defend exists where there is a possibility of a covered claim, [but] an insurer is obligated to indemnify the insured only for claims that in fact fall within the scope of the coverage provided by the policy." Jessco, Inc. v. Builders Mutual Ins. Co., 472 Fed. Appx. 225, 231 (4th Cir. 2012). Even so, while "[i]t is the insured's burden to establish that a claim falls within the coverage of an insurance contract . . . [,] the insurer shoulders the burden of establishing exclusions to coverage and the exclusion is construed 'most strongly' against the insurer". . . . State Farm Fire and Casualty Co. v. Blanton, No. 13-2508, 2015 WL 9239788 at * 7 (D.S.C. Dec. 17, 2015)(internal citations omitted).

Here, the insurance policy between Plaintiff and the Bowers provides in the relevant part of Section II - Liability, coverage as follows:

> Coverage E - Personal Liability
>
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will: 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable [...]
>
> Coverage F - Medical Payments To Others
>
> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury" [...] As to others, this coverage applies only: 1. To a person on the "insured location" with the permission of an "insured"; or 2. To a person off the "insured location", if the "bodily injury": [...] b. Is caused by the activities of an "insured"

An occurrence is defined in the policy as: "accident, including continuous or repeated exposure to



4

substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or 'Property damage'". <u>See</u> Plaintiff's Exhibit A to First Motion for Summary Judgment, p. 2.

Plaintiff has not contested that it was the behavior of Mrs. Bower that led to the occurrence at issue, as the golf cart was within her direct control at the time of the accident. Rather, the dispute between Plaintiff and the Responding Defendants is where the occurrence occurred, as the policy has exclusions in Section II which provide:

A. "Motor Vehicle Liability"

1. Coverage E [liability] and F [medical payments] do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":
. . .

> b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"[.]

Plaintiff argued in its original motion for summary judgment that the incident occurred on a public road, and that the golf cart was therefore operating in an area where it was required to be registered but was not registered. <u>See</u> Plaintiff's Reply Brief on First Motion for Summary Judgment, p. 4. In Plaintiff's second motion for summary judgment, Plaintiff contends that "the evidence now shows that the location of the accident is obvious and that it happened on the road and within the road's right-of-way."[2] <u>See</u> Plaintiff's Reply Brief for Second Motion for Summary Judgment, p. 1; <u>see also</u> Plaintiff's Second Motion for Summary Judgment, p. 7. The Responding Defendants

---

[2] The Defendants do not contest that there would be no coverage not just if the accident occurred on the public road, but also within the right-of-way of that road. <u>See</u> Defendants' Memorandum in Opposition to Plaintiff's Second Motion for Summary Judgment, pp. 4-5.



concede that "[i]f the occurrence took place on a public road then the golf cart would have been required to be registered [it was not] and Defendants would be barred from coverage."  See Memorandum in Opposition to Summary Judgment, p. 6.  However, the Responding Defendants contend that the occurrence in this case (the actual accident at issue) did not occur on a public road.

In support of this argument, the Responding Defendants originally submitted evidence to show that on November 28, 2015[3], Rick Kijanka witnessed a golf cart damaged and sitting in the grass on the opposite side of Rivertowne Country Club Drive across from his residence.  See Kijanka's Affidavit, ¶ 2.  Subsequently, on May 12, 2016, Kijanka marked the outline of where the golf cart landed with spray paint.  See Kijanka's Affidavit, ¶ 3.  On May 13, 2016, Peabody & Associates, Inc. surveyed the spray painted outline of the golf cart created by Kijanka and prepared a plat, and responding Defendants contend that this plat confirms that the golf cart accident occurred on the golf course, not on the "public roads".  See Court Docket Nos. 42-2, 42-3, and 42-4.  The Court denied Plaintiff's First Motion for Summary Judgment in part by relying on this evidence, including the plat prepared from Mr. Kijanka's markings, which showed the landing place of the golf cart to have been on the golf course.  However, since the first motion for summary judgment was denied, Plaintiff has deposed Kijanka, who testified as follows: he did not actually see the accident occur (Kijanka Deposition, pp. 14, 16); that he was on his way home from work when he came across the scene and it was after most of the people had cleared out from the scene of the accident (Kijanka Deposition, p. 14); that he did not take any photos on the day of the accident or make any kind of

---

[3]That memorandum in opposition apparently has a scrivener's error listing this date as November 18, 2015.  See Memorandum in Opposition to Plaintiff's First Motion for Summary Judgment, p. 3.  However, Kijanka's Affidavit lists the date of November 28, 2015, which was also the date of the accident.  See  Kijanka's Affidavit, ¶ 2.

6



markings on the ground on that day (Kijanka Deposition, p. 14); that he did not know how the accident occurred (Kijanka Deposition, p. 16); that he did not know where the golf cart originally landed (Kijanka Deposition, pp. 16-17); that he went back to the scene about a month later with counsel for the Gibbons Defendants and told him where he thought the golf cart had landed (Kijanka Deposition, p. 19); that months later he painted the outline of the golf cart based on his memory of where he thought the golf cart had landed (Kijanka Deposition, p. 20); that he did not know if the golf cart had been moved after the accident but before he got to the scene (Kijanka Deposition, p. 21); and that the pictures shown and represented to be taken on the day of the accident showed the golf cart in a different location than where he remembered it being by the time he arrived at the scene (Kijanka Deposition, pp. 23-24). Accordingly, Plaintiff argues that Kijanka's testimony now clarifies that he does not know where the golf cart landed after the accident.

Plaintiff has also now submitted excerpts from other depositions. Tate Gibbons testified that he arrived on the scene after the accident, and that the Plaintiff's photographs 1-5 reflect his recollection of the accident scene, which would support the Plaintiff's position. See Tate Gibbons Deposition, p. 19. George Bower testified that he arrived about ten to fifteen minutes after the accident and that at that time, the golf cart was on a patch of grass between the road and sidewalk and then partially on the sidewalk. See George Bower, pp. 9-10. Aimee Spencer, a passenger in the golf cart at the time of the accident, testified that the golf cart lost control as it hit the curb and flipped; see Spencer Deposition, p. 27; and when shown the rectangle drawn in Exhibit 3 [the location which was designated on the plat], testified that based on her recollection that was not where the golf cart had landed. See Spencer Deposition, p. 35. Finally, Plaintiff's Accident Reconstruction


Analysis performed by SEA, Ltd.[4] concluded that the accident occurred from the loss of control of the golf cart by Mrs. Bower as she maneuvered the vehicle from the roadway up and over the roadway curbing; that the resting position of the golf cart was west of the sidewalk and on the roadway's right-of-way; and that the accident began on the roadway and ended on the roadway's adjacent right-of-way along Rivertowne Country Club Drive. See Court Docket No. 72-10, p. 3. Plaintiff has also submitted video evidence showing where the golf cart was located when the police arrived on the scene to investigate the accident.

However, the majority of the witnesses whose testimony has been provided were not present at the time of the accident, and their testimony is based on the golf cart's location when they arrived at the scene. Likewise, the videos submitted from the Mt. Pleasant Police also show where the golf cart was when they arrived on the scene. However, it is undisputed that the golf cart had been moved by that time (when it was lifted off of Mrs. Bower's leg). Further, Aimee Spencer, an eyewitness who was actually in the golf cart when it overturned, testified that the golf cart's final resting place was *between* the two sidewalks. See Spencer Deposition, pp. 30, 35.[5] Therefore, Plaintiff's evidence is not definitive on this issue.

In sum, based on the evidence now before the Court, there is still a question of fact whether the golf cart ended up in the public right-of-way between the road and the sidewalk closest to the road OR on private property between the two sidewalks. While Plaintiff has submitted

---

[4]This evidence was also obtained after the Court's denial of Plaintiff's First Motion for Summary Judgment.

[5]There were two sidewalks adjacent to the public road, and it is uncontested that the area between the first sidewalk (the one closest to the road) and the second sidewalk was not in the public right of way. See Court Docket No. 72-10, p. 10; Court Docket No. 42-2.



evidence to cast doubt on the location of the golf cart as marked on the plat, as well as testimony from witnesses about where they saw the golf cart located when they arrived, the Court cannot find as a matter of law that the location where the golf cart reached its final resting place following the accident was between the road and the closest sidewalk. In order to grant summary judgment for the Plaintiff, the Court would have to find that there is no question of fact that the occurrence occurred on a public road, and based on the evidence submitted, no such finding can be made, as the evidence presented calls into question whether the occurrence occurred on a public road or on private property. Specifically, Mrs. Bowers testimony is ambiguous, while Mrs. Spencer, one of the few people present during the accident to testify, testified that the golf cart's final resting place following the accident was between the two sidewalks.[6] Therefore, Plaintiff is not entitled to summary judgment on this ground. Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999)["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"].

Responding Defendants further point out that injuries derived from use of a golf cart can be covered under Section II A.2.e., which allows coverage for:

> A motorized golf cart that is owned by an "insured", designed to carry up to 4 persons,

---

[6] Although not determinative of the issue at this time, Plaintiff also argues that the transition from the public right-of-way to the private property of the country club golf course lies approximately in the middle of the sidewalk closest to the public road, and there is a black line drawn in the middle of the plat submitted by the Defendants (implying that that is where the transition from public to private property begins). However, the parties have not submitted evidence to conclusively establish that the middle of that sidewalk is where the transition from public to private property occurs. See Court Docket No. 72-10, p. 10; Court Docket No. 42-2. In any event, although neither party appears to contest this issue, since Spencer's testimony places the golf cart *between* the sidewalks, it is not necessary to decide that issue.

9



not built or modified after manufacture to exceed a speed of 25 miles hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

> (1) A golfing facility and is parked or stored there, or being used by an "insured" to:
>
> (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;
>
> (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or
>
> (c) Cross public roads at designated points to access other parts of the golfing facility;
> . . .

See Plaintiff's Exhibit A to First Motion for Summary Judgment, p. 17 [Exclusion A.2.e.(1)]. Although Plaintiff argues that this section does not apply since it is uncontested that the Defendants were not playing golf or attempting to access the golf facilities at the time of the accident, there is no evidence to conclusively demonstrate that the recreational or leisure activity the parties were engaged in were activities not otherwise allowed by the facility. See Section II A.2e(1)(a). Therefore, the undersigned is also unable to find as a matter of law based on the evidence provided that the golf cart ride at issue in this case could not be considered "other recreational or leisure activity allowed by the facility" under the terms of the policy. Blanton, 2015 WL 9239788, at * 7 ["[T]he insurer shoulders the burden of establishing exclusions to coverage and the exclusion is construed 'most strongly' against the insurer". . . .]. Therefore, Plaintiff is also not entitled to summary judgment on this ground. Muhammad, 36 F.Supp.2d at 243; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)["[T]he weighing of evidence, and drawing of legitimate inferences from the facts" are functions for the trier of fact].



**Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's second motion for summary judgment be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 18, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).